[No. 1409.]

METARIO GONZALES *v.* THE STATE.

THEFT—EVIDENCE—CHARGE OF THE COURT.—The jury in a theft case were instructed that, if they should "believe from the evidence that the defendant himself did take the horse in question, in such a manner as to constitute theft, or, knowing the same to be stolen, received the same, then he is guilty of the theft thereof." *Held*, error, in that it authorizes the jury to convict of theft upon proof showing the receiving of stolen property.

APPEAL from the District Court of Hays. Tried below before the Hon. L. W. Moore.

The indictment charged the theft of a horse, the property of E. C. Barker. The venue was laid in Hays county, and the date of the offense was alleged to be the thirteenth day of June, 1882. The trial of the appellant resulted in his conviction, with a five years term in the penitentiary awarded as punishment.

E. C. Barker testified, for the State, that now and in June, 1882, he lived in Comal county, Texas, some twenty-four miles distant from Mountain City, in Hays county. On or about the third Friday in that month he had stolen from him a blue dun colored, or as it is commonly called, a "gruyere" horse. On the day before this horse was taken, the witness saw the defendant and some other Mexicans near his place in Comal county, gathering horses for Elsner. The witness recovered his horse in Bell county, a few days before this trial.

Tom Cowan testified, for the State, that he knew both the defendant and E. C. Barker, and pointed them out in court. He also knew the "gruyere" horse, for the theft of which the defendant was being prosecuted, and knew it to be the property of E. C. Barker. He saw the defendant riding the said horse near Mountain City, about the last of June or first of July, 1882, and suspected at the time that the horse had been stolen, as he knew Barker to be very much attached to the horse, and did not believe that he would sell him. The witness's father was with him at this time. Some three days later, there was a balloon ascension at Kyle, in Hays county, which the witness and his father attended. They there encountered the defendant again, and, hav-

ing heard of the theft of the horse, they asked him about it. The defendant studied a while, and then said that he had never owned such a horse.

The witness stated on his cross-examination that, when he saw the defendant on the horse at Mountain City, he said nothing to him about it. He did not then know that the animal had been stolen, though he suspected it. A few days later, he sent Barker word from Wimberley's mill that he had seen the horse.

Cowan, senior, corroborated the testimony of his son, the last witness.

Jesus Perales testified, for the State, that the defendant offered to sell him a "gruyere" horse, near Kyle, in Hays county, a few days before the balloon ascension. The witness did not buy. It was the same horse for the theft of which the defendant was being prosecuted.

E. Dudley testified, for the State, that some time in June or July, 1882, the defendant pastured the horse he is charged to have stolen, in the pasture of Mr. Ligon, in Hays county, about six miles north-west from Kyle.

Joe Tyler and one Thorp, witnesses for the defense, testified that they saw one Peter, a Mexican, riding the horse which the defendant is charged to have stolen, on or about the first of June, 1882. He rode the horse up to the widow Johnson's place, in Hays county, Texas.

The wife of the defendant testified, in his behalf, that she knew the "gruyere" horse which is charged to have been stolen by the defendant. One Peter, a Mexican, brought the horse to the defendant at his house, and left him there. This was a short time before the balloon ascension at Kyle.

This witness testified, on cross-examination, that Peter rode the horse up to the defendant's house about twelve o'clock in the day, and left him there. There was a saddle on the horse then. Peter went off as soon as he left the horse, but whether on foot or riding, the witness did not know. He did not get another horse in exchange from the defendant. The witness did not know what became of the horse brought by Peter to the defendant's house. The defendant did not take a trip to Bell county after Peter brought the horse to his house.

Gregorio, a Mexican, testified, for the defense, that he saw Peter ride the "gruyere" horse up to the defendant's house about twelve o'clock one day shortly before the balloon ascension at Kyle. Peter remained a while at the house and rode the horse

D.

off.   He returned afterwards and left the horse at the defend-
ant's house.

Baldez, a Mexican, testified, for the defense, that, a short time
before the balloon ascension, Peter tried to sell him a "gruyere"
horse, which, to the best of his knowledge and belief, was the
identical horse which the defendant is charged to have stolen.
This was at the witness's house.   Gregorio came to the house
with Peter.

Gregorio, recalled, corroborated Baldez as to Peter's effort to
sell him the horse, and he stated that that horse was the one in
question.   He accompanied Peter to show him the way to Bal-
dez's house.   When they returned to defendant's, Peter unsad-
dled the "gruyere" horse, and with his saddle disappeared in the
bushes.   Another horse was missing from the neighborhood next
morning, and Peter likewise.   This witness also testified that on
the day Peter rode the horse to the defendant's house, he, the
witness, Peter and the defendant ate dinner together at the de-
fendant's house; that the defendant's wife cooked the dinner and
waited on the table, and that he thought the defendant took a
trip after the horse was brought to his house; which facts, the
defendant's wife, being introduced by the State in rebuttal, dis-
puted.

The appellant's motion for a new trial assailed that part of the
charge which is the subject of the principal ruling in this case,
and alleged that the verdict was defective in that it did not affir-
matively find whether the defendant was guilty of theft or of
receiving stolen property, and that it was contrary to the law
and the evidence.   The motion was overruled and the defendant
appealed.

*W. O. Hutchison,* for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

HURT, J.   Appellant was convicted of theft.   The court charged
the jury that: "If the jury should believe from the evidence
that the defendant himself did take the horse in question in such
a manner as to constitute theft, or, knowing the same to be stol-
en, received the same, then he is guilty of the theft thereof."

We do not think it has ever been the law in this State that a
person could be convicted of theft under proof of receiving stolen

property.   Convictions for receiving stolen property have been sanctioned under indictments which merely charged theft.

The charge is erroneous; for which the judgment is reversed.

*Reversed and remanded.*

Opinion delivered October 18, 1882.